**No. 25-11348**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

IN RE: AE OPCO III, LLC,
*Debtor.*

AAR CORP.,
*Appellant and Cross-Appellee,*

v.

AE OPCO III, LLC and AE HOLDCO III, INC.,
*Appellees and Cross-Appellants.*

On Direct Appeal from the U.S. Bankruptcy Court for the
Middle District of Florida, No. 8:22-bk-1186

### OPENING BRIEF OF APPELLANT AAR CORP.

Morgan R. Hirst
JONES DAY
110 North Wacker Dr., Suite 4800
Chicago, Illinois 60606
(312) 782-3939
mhirst@jonesday.com

Patrick M. Mosley
Sarah E. Gunn
HILL WARD HENDERSON
101 E. Kennedy Blvd., Suite 3700
Tampa, Florida 33602
(813) 221-3900
patrick.mosley@hwhlaw.com
sarah.gunn@hwhlaw.com

C. Kevin Marshall
*Counsel of Record*
David Wreesman
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3939
ckmarshall@jonesday.com
dwreesman@jonesday.com

*Counsel for Appellant AAR CORP.*

AAR CORP. v. AE OPCO III, LLC, No. 25-11348

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Appellant AAR CORP., per Fed. R. App. P. 26.1 and this Court's Rule 26.1-1, submits the following certificate of interested parties and corporate disclosure statement:

- AAR CORP. is a publicly traded corporation (NYSE: AIR). More than 10% of its stock is owned by BlackRock, Inc. (NYSE: BLK), and more than 10% of its stock is owned by Vanguard Group, Inc.

- AE OpCo III, LLC, the Debtor, is wholly owned by Appellee AE HoldCo III, Inc., which is not a publicly held corporation.

The following parties and participants may have an interest in the outcome of this case:

- BlackRock, Inc. (NYSE: BLK)—holds more than 10% of Appellant AAR CORP.'s stock

- Boyd, Joseph R.—attorney for Appellee AE HoldCo III, Inc.

- Cahow, Caitlin K.—attorney for Appellant AAR CORP.

- Gomez, Jr., Alberto F.—attorney for Appellee AE OpCo III, LLC

- Gunn, Sarah E.—attorney for Appellant AAR CORP.

- Hirst, Morgan R.—attorney for Appellant AAR CORP.

- Johanson, Erik—attorney for Appellee AE HoldCo III, Inc.

- Lim, Angelina E.—attorney for Appellee AE OpCo III, LLC

- Marshall, C. Kevin—attorney for Appellant AAR CORP.

- McEwen, Honorable Catherine Peek—Presiding Judge

**AAR CORP. v. AE OPCO III, LLC, No. 25-11348**

- Merryday, Honorable Steven D.—Presiding Judge where Appellant AAR CORP.'s appeal was first taken, No. 8:24-cv-2445 (M.D. Fla.)

- Mosley, Patrick M.—attorney for Appellant AAR CORP.

- Vanguard Group, Inc.—holds more than 10% of Appellant AAR CORP.'s stock

- Wreesman, David—attorney for Appellant AAR CORP.

The case below was a bankruptcy proceeding, and the Debtor was AE OpCo III, LLC.

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant AAR CORP. respectfully requests oral argument. *See* 11th. Cir. R. 28-1(c). Direct appeals from the bankruptcy courts are almost always argued orally. As AAR explained in its petition for direct appeal, this appeal involves questions of law as to which there is no controlling precedent in the Eleventh Circuit, and it involves a question of law requiring resolution of conflicting decisions in this Circuit's bankruptcy courts. This Court will benefit from oral argument.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES ................................................................ 2

INTRODUCTION .................................................................................... 3

STATEMENT OF THE CASE .................................................................. 5

    A. AAR Manufacturing's 2020 sale of its composites business to AE
        OpCo with AE OpCo's agreement to indemnify AAR CORP ............ 5

    B. AE OpCo's 2022 bankruptcy and settlement with Short Brothers ...... 10

    C. AAR's attempt in the bankruptcy to secure indemnification
        against Short Brothers' suit in Northern Ireland ............................... 11

    D. The Bankruptcy Court's ruling that the Bankruptcy Code excused
        Debtor AE OpCo from its obligation to indemnify AAR ................. 13

STANDARD OF REVIEW ...................................................................... 16

SUMMARY OF ARGUMENT ................................................................ 17

ARGUMENT ......................................................................................... 19

I. THE BANKRUPTCY CODE REQUIRED DEBTOR TO INDEMNIFY AAR
   FOR ITS POTENTIAL LOSSES IN NORTHERN IRELAND. ........................... 19

    A. Bankruptcy courts "shall allow" all claims not prohibited by the
        Code, including contingent ones. ..................................................... 19

    B. Because AAR was no longer "liable with" Debtor to Short
        Brothers, § 502(e)(1)(B) did not disallow AAR's claim for
        indemnification. .............................................................................. 23

        1. Section 502(e)(1)(B) prohibits contingent claims by *presently*
            co-liable parties, thus protecting debtors from double
            recovery. ................................................................................ 23

2.  When Debtor settled with Short Brothers, it ceased to be
    "liable with" AAR to Short Brothers and eliminated any bar
    on allowing AAR's indemnification claim................................. 32

C.  The Bankruptcy Court's reasons for disallowing AAR's claim
    conflict with the statutory text, caselaw, and purpose. ..................... 35

II. THE BANKRUPTCY CODE REQUIRED DEBTOR TO INDEMNIFY AAR
    FOR ITS FEES AND COSTS INCURRED IN THE BANKRUPTCY
    LITIGATION. ........................................................................................ 42

A.  Debtor must pay AAR its pre-petition claim for fees, even though
    the fees were incurred after Debtor filed its bankruptcy petition. ....... 44

B.  Debtor must pay AAR its fees, even though AAR's claim is
    unsecured. ..................................................................................... 49

CONCLUSION........................................................................................ 54

iii

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baker Botts LLP v. ASARCO, LLC*,
  576 U.S. 121 (2015) ................................................................. 10

*Bendall v. Lancer Mgmt. Grp., LLC*,
  523 F. App'x 554 (11th Cir. 2013) .........................................20, 22, 44–45

*BFP v. Resolution Tr. Corp.*,
  511 U.S. 531 (1994) ................................................................. 36

*Cohen v. de la Cruz*,
  523 U.S. 213 (1998) ................................................................. 45

*Delle Donne & Assocs., LLP v. Millar Elevator Serv. Co.*,
  840 A.2d 1244 (Del. 2004) ........................................................ 42

*In re 804 Cong., L.L.C.*,
  529 B.R. 213 (Bankr. W.D. Tex. 2015) ................................................. 22

*In re Amatex Corp.*,
  110 B.R. 168 (Bankr. E.D. Pa. 1990) ..................................................... 27

*In re Ariana Energy, LLC*,
  2015 WL 6666245 (Bankr. E.D. Ky. Oct. 30, 2015) ................................ 30

*In re Caribbean Petroleum Corp.*,
  566 F. App'x 169 (3d Cir. 2014) ............................................................ 26

*In re Celotex Corp.*,
  700 F.3d 1262 (11th Cir. 2012) ............................................................. 28

*In re Charge Enters., Inc.*,
  2024 WL 5131141 (Bankr. D. Del. Dec. 16, 2024) ................................... 28

*In re Charter Co.*,
  81 B.R. 644 (M.D. Fla. 1987) ................................................................ 25

*In re Charter Co.*,
862 F.2d 1500 (11th Cir. 1989) (*Charter I*) ...........................................25, 34

*In re Charter Co.*,
876 F.2d 866 (11th Cir. 1989) (*Charter II*)......................... 21–22, 34, 46, 48

*In re Chateaugay Corp.*,
89 F.3d 942 (2d Cir. 1996) ....................................................................... 30

*In re Dant & Russell, Inc.*,
951 F.2d 246 (9th Cir. 1991) ...............................................24, 27, 30, 40

*In re Eagle–Picher Indus., Inc.*,
131 F.3d 1185 (6th Cir. 1997).....................................................3, 30–31, 40

*In re Elec. Mach. Enters., Inc.*,
371 B.R. 549 (Bankr. M.D. Fla. 2007) ..............................................53–54

*In re Fuel Barons, Inc.*,
488 B.R. 783 (Bankr. N.D. Ga. 2013) ................................................24, 28

*In re Glados, Inc.*,
83 F.3d 1360 (11th Cir. 1996) ................................................................. 38

*In re Hemingway Transp., Inc.*,
954 F.2d 1 (1st Cir. 1992)......................................................................... 37

*In re Hemingway Transp., Inc.*,
993 F.2d 915 (1st Cir. 1993) .....................................21, 23, 26, 29–30, 32

*In re Hercules Offshore, Inc.*,
571 B.R. 633 (Bankr. D. Del. 2017) ........................................................ 27

*In re Laidlaw USA, Inc.*,
287 B.R. 603 (Bankr. W.D.N.Y. 2002) ................................................... 27

*In re Lamarre*,
269 B.R. 266 (Bankr. D. Mass. 2001)...................................................... 22

*In re Lane*,
68 B.R. 609 (Bankr. D. Haw. 1986) ........................................................ 37

*In re Lazarus Holdings, LLC*,
    816 F. App'x 417 (11th Cir. 2020) .......................................................... 54

*In re LTC Holdings, Inc.*,
    10 F.4th 177 (3d Cir. 2021) .................................................................... 30

*In re Manown Eng'g Co.*,
    631 B.R. 492 (Bankr. N.D. Fla. 2021)..................................................... 20

*In re MEI Diversified, Inc.*,
    106 F.3d 829 (8th Cir. 1997) .................................................................. 30

*In re Regal Cinemas, Inc.*,
    393 F.3d 647 (6th Cir. 2004) .................................................................. 32

*In re Serta Simmons Bedding, L.L.C.*,
    125 F.4th 555 (5th Cir. 2024) ................................................................. 25

\* *In re SNTL Corp.*,
    571 F.3d 826 (9th Cir. 2009) ...........................................45–47, 49, 52–54

*In re Sokolik*,
    635 F.3d 261 (7th Cir. 2011) .................................................................. 45

\* *In re TBH19, LLC*,
    2022 WL 16782946 (B.A.P. 9th Cir. Nov. 8, 2022) ............14, 26–27, 39–40

*In re U.S. Lines, Inc.*,
    199 B.R. 476 (Bankr. S.D.N.Y. 1996)..................................................... 22

*In re Wagner*,
    115 F.4th 1296 (11th Cir. 2024).............................................................. 16

*In re Wedtech Corp.*,
    85 B.R. 285 (Bankr. S.D.N.Y. 1988)....................................................... 28

\* *In re Welzel*,
    275 F.3d 1308 (11th Cir. 2001).............................................36, 46, 50–54

*In re Wolverine, Proctor & Schwartz, LLC*,
    436 B.R. 253 (D. Mass. 2010) ................................................................ 27

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*,
    599 U.S. 382 (2023) ................................................................. 19

*Musso v. Ostashko*,
    468 F.3d 99 (2d Cir. 2006) ...................................................... 19

*N.L.R.B. v. Bildisco & Bildisco*,
    465 U.S. 513 (1984) ................................................... 21, 34, 49

* *Ogle v. Fid. & Deposit Co. of Md.*,
    586 F.3d 143 (2d Cir. 2009)................................... 45, 49, 52–54

*Pike Creek Chiropractic Ctr., P.A. v. Robinson*,
    637 A.2d 418 (Del. 1994) ....................................................... 42

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
    589 U.S. 35 (2020) .................................................................. 19

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) ............................................... 24

* *SummitBridge Nat'l Invs. III, LLC v. Faison*,
    915 F.3d 288 (4th Cir. 2019) ....................... 21, 45–46, 49, 51–54

*Tang Man Sit v. Capacious Invs. Ltd.*,
    [1996] AC 514 (PC) .............................................................. 33

* *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
    549 U.S. 443 (2007) .............................. 20–21, 44–45, 47, 50–54

*United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
    484 U.S. 365 (1988) .......................................................... 52–53

*United States v. Verdunn*,
    89 F.3d 799 (11th Cir. 1996) .................................................. 20

*United States v. Wilson*,
    503 U.S. 329 (1992) ................................................................ 24

## STATUTES

11 U.S.C. § 101 ............................................................. 19, 36, 45

11 U.S.C. § 108 ............................................................... 36

11 U.S.C. § 109 ............................................................... 36

11 U.S.C. § 348 ............................................................... 36

11 U.S.C. § 501 .................................... 19, 29, 34–35, 37, 46–47

11 U.S.C. § 502 ................... 2–4, 13–15, 17–18, 20–33, 35–41, 43–50, 52–53

11 U.S.C. § 506 ............................................ 15, 18, 36, 49–54

11 U.S.C. § 507 ............................................................... 36

11 U.S.C. § 509 .................................................. 29–30, 35, 37

11 U.S.C. § 522 ............................................................. 28, 36

11 U.S.C. § 543 ............................................................... 28

11 U.S.C. § 550 ............................................................... 28

11 U.S.C. § 1141 .............................................................. 49

11 U.S.C. § 1145 .............................................................. 36

11 U.S.C. § 1181 .............................................................. 10

11 U.S.C. § 1184 .............................................................. 10

11 U.S.C. § 1232 .............................................................. 36

11 U.S.C. § 1305 .............................................................. 36

28 U.S.C. § 157 ................................................................. 1

28 U.S.C. § 158 .............................................................. 1, 16

28 U.S.C. § 1334 ............................................................... 1

## OTHER AUTHORITIES

*Black's Law Dictionary* (12th ed. 2024) ........................................ 20

Fed. R. Bankr. P. 3001 ..................................................... 19–20

Fed. R. Bankr. P. 3002 ................................................................ 19

Fed. R. Bankr. P. 9001 ................................................................ 32

Fed. R. Bankr. P. 9019 ................................................................ 32

H.R. Rep. No. 95–595 (1977), *reprinted in* 1978 U.S.C.C.A.N.
    5963.................................................................................... 30

Richard Levin & Henry J. Sommer, *Collier on Bankruptcy*
    (16th ed. 2025) ............................................... 29–31, 38, 47, 49

William L. Norton III, *Norton Bankruptcy Law & Practice* (3d ed.
    2025 update) ...................................................................... 38

## STATEMENT OF JURISDICTION

Appellee AE OpCo III, LLC ("Debtor"), filed for bankruptcy under Chapter 11 of the Bankruptcy Code (11 U.S.C.), and the Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 1334(a) and 157(a). Appellant AAR CORP. ("AAR") filed a timely proof of claim. In an order dated September 25, 2024, the Bankruptcy Court fully and finally resolved AAR's claim. Doc. 576. AAR timely appealed on October 7, 2024. Doc. 578; *see In re Celotex Corp.*, 700 F.3d 1262, 1265 (11th Cir. 2012) (bankruptcy court order "resolv[ing] all of the issues pertaining to a discrete claim" is final) (quotation marks omitted). AAR then timely petitioned for direct appeal under 28 U.S.C. § 158(d)(2), and this Court granted AAR's petition on April 22, 2025. *See* No. 24-90029 (11th Cir.), Dkts. 5, 19. This Court thus has jurisdiction under 28 U.S.C. § 158(d)(2).

## STATEMENT OF THE ISSUES

**1.** Title 11 of the U.S. Code, § 502(e)(1)(B), disallows a reimbursement claim when the claimant "is liable with the debtor" to a creditor (and other conditions are met). When Debtor filed for bankruptcy, AAR and Debtor were both potentially liable to Short Brothers. But Debtor (and only Debtor) then settled with Short Brothers. Was it legal error for the Bankruptcy Court to partially disallow AAR's indemnification claim because AAR and Debtor had been co-liable when the bankruptcy case was filed, even though they were not co-liable when the Bankruptcy Court considered AAR's claim?

**2.** Under 11 U.S.C. § 502(b), a court generally "shall allow" a claim, even if it is "contingent or unmatured." Section 506(b) of Title 11 grants secured status to an oversecured creditor's claim for post-petition fees and is silent as to an unsecured claim. AAR's unsecured contractual right to indemnification arose pre-petition, but the Bankruptcy Court disallowed fees AAR incurred in pursuing indemnification from the Debtor in the bankruptcy because they were incurred post-petition. Was that legal error?

## INTRODUCTION

In 2020, appellant AAR CORP.'s subsidiary sold part of its manufacturing operations to appellee AE OpCo III (who later became Debtor). To facilitate the deal, AAR re-affirmed its guarantee of performance on the largest contract sold with the business, but only after Debtor promised to hold AAR harmless for any losses related to the contract. Debtor has failed to keep that promise.

After Debtor allegedly breached the manufacturing contract AAR had guaranteed, it filed for bankruptcy. Short Brothers, the counter-party to the manufacturing contract, sued *AAR* for *Debtor's* breach, citing the guarantee. Short Brothers also filed in the bankruptcy a claim against Debtor, and they quickly settled. When AAR asked Debtor to honor its indemnification promise and hold it harmless from Short Brothers' suit, Debtor refused. Debtor convinced the Bankruptcy Court that § 502(e)(1) of the Bankruptcy Code allowed it to escape its obligations to AAR. That reading is clearly wrong.

Section 502(e)(1) says that, if a bankruptcy claimant (here, AAR) seeks indemnification from the debtor for a third-party suit (here, Short Brothers'), the bankruptcy court should disallow the indemnification claim only if the claimant "is liable with the debtor" to the third party. This rule "protects debtors from multiple liability on contingent debts." *In re Eagle–Picher Indus., Inc.*, 131 F.3d 1185, 1187 (6th Cir. 1997) (quotation marks omitted). Under the plain text of

3

§ 502(e)(1), AAR "is" *not* "liable with" Debtor to Short Brothers. Because, over a year before the Bankruptcy Court considered AAR's claim, Short Brothers settled with Debtor and withdrew its claim, AAR will not recover funds from Debtor that Short Brothers also seeks from Debtor. So the court should have allowed AAR's claim. Yet the court disallowed it because, although AAR and Debtor *were no longer* "liable with" each other *then*, they *had been* co-liable *when the Debtor filed for bankruptcy*, and the court thought *another* provision of the Code required it to look only at that past date. *No* other court has thought this; this Court's precedent points against it; and on-point persuasive authority rejects it.

The Bankruptcy Court also denied AAR's claim for the attorneys' fees it had incurred pursuing indemnification in the bankruptcy. The court agreed that Debtor was contractually obligated to indemnify AAR and that this obligation included fees. And it acknowledged that *every* court of appeals to consider AAR's type of claim had allowed it. But the court thought it fatal that AAR had (of course) not yet incurred these fees when the bankruptcy started. Once again, it cited *no* case for its ruling, and it ignored that the Bankruptcy Code *requires* courts to allow claims that are contingent on future events (like incurring fees).

Nothing in the Code or precedent justifies these results. This Court should reverse and remand with instructions that the Bankruptcy Court fully hold Debtor to its obligation to pay AAR's claim, the only one left in the case.

4

## STATEMENT OF THE CASE

**A.    AAR Manufacturing's 2020 sale of its composites business to AE OpCo with AE OpCo's agreement to indemnify AAR CORP.**

**1.**  Founded in 1951, AAR is one of the world's largest suppliers of products and services for the aviation industry. It maintains aircraft repair and parts-supply facilities throughout the United States and worldwide, including six locations in Florida.

AAR Manufacturing, Inc. ("Manufacturing"), a subsidiary of AAR specializing in products for the aerospace and defense industries, operated a line of business that produced airplane parts from composite materials. Doc. 435, at A559. Manufacturing's largest customer was Short Brothers PLC, in Belfast, Northern Ireland (UK), which purchased carbon-fiber covers to install under aircraft wing flaps. *Id.* at A559–60. These covers, known as fairings, protect underwing equipment and reduce drag. Short Brothers used Manufacturing's fairings to make parts it then supplied to Airbus for its A220 passenger jet. Doc. 408-2, at A394, A406.[1]

The Manufacturing–Short Brothers relationship was governed by a procurement contract signed in 2009. Doc. 435, at A559. Under this Procurement Contract, Manufacturing supplied parts to Short Brothers at prices dictated by

---

[1] Some parts of the record refer to "Bombardier" instead of Short Brothers. Bombardier was the former parent of Short Brothers.

the contract. Doc. 436, at A881-83, A949-51, A976-77.[2] AAR signed a guarantee with Short Brothers, which the Procurement Contract's terms contemplated and was an appendix to that contract, guaranteeing Manufacturing's performance. *Id.* at A872, A966–69. This contractual relationship is illustrated in Figure 1 below.

### Figure 1: Procurement Contract Before Sale of Composites Business



The Procurement Contract also included a term that Manufacturing could not assign the contract without Short Brothers' consent. *Id.* at A944.

**2.** Eleven years into the contract, in March 2020, AAR began negotiating with the appellees here about selling Manufacturing's composites business. *See* Doc. 435, at A560. Appellees are AE OpCo III, LLC (which became Debtor in the bankruptcy below) and its parent AE HoldCo III, Inc. Ultimately, both are owned by Architect Equity LLC, a California-based private-equity firm. *Id.*

The parties agreed to the following plan, memorialized in their Asset Purchase Agreement: Debtor would purchase the composites business from

---

[2] Doc. 436 is in App. Vol. 5, filed separately under seal.

Manufacturing for a base purchase price of $1.5 million, to be adjusted by the difference between the composites business's net working capital at closing and a working-capital target of $10.8 million. Doc. 408-2, at A332, A367, A375. While Manufacturing would retain and continue to operate all the non-composites parts of its business, Debtor would receive "all … right, title and interest in and to all of the assets of [Manufacturing] that relate exclusively to the Composites Business." *Id.* at A330. (Those assets included the manufacturing facility in Clearwater, Florida, then valued at $6 million. *Id.* at A387–88. Debtor's affiliate sold it three years later for over $8 million. Doc. 500, at A565.) Debtor would correspondingly assume the composites business's liabilities, including "all liabilities and obligations arising under or relating to" the composites business's contracts. Doc. 408-2, at A331. Through the purchase, Debtor hoped to exploit efficiencies from a planned consolidation of the composites business's operations in Florida. *See id.* at A387–88 (describing planned move).

During negotiations, the parties considered how to address AAR's guarantee of the Procurement Contract with Short Brothers and how to obtain Short Brothers' consent for assigning the contract to Debtor. Debtor agreed to indemnify AAR against its guarantee, and the parties included several broad indemnification provisions in the Asset Purchase Agreement:

7

- Debtor promised to "indemnify and hold harmless" Manufacturing and its affiliates, including AAR, "against … any and all Losses … to the extent resulting or arising from … any Assumed Liability," including the Procurement Contract. *Id.* at A357; *see id.* at A331 (defining "Assumed Liabilities"), A367 (defining "Assigned Contract"), A330 (defining "Business Assets").

- Debtor, in agreeing to work with AAR and Short Brothers to obtain a "reasonable arrangement designed to provide [Debtor the] benefits" of the Procurement Contract, promised to "indemnify and hold [AAR] harmless from any damages relating to, resulting from or arising out of" the Procurement Contract or such arrangement. *Id.* at A354.

- Debtor committed to "obtain the full release of [AAR] from any" guarantee of Manufacturing's contracts, including the Procurement Contract, and agreed, if it did not succeed, to hold AAR harmless for any losses AAR incurred with respect to its guarantees. *Id.* at A353.

The parties executed the Asset Purchase Agreement on June 23, 2020. *Id.* at A325; Doc. 435, at A560. Two days later, Manufacturing, with input from Debtor and its owner, wrote Short Brothers seeking its consent to assigning the Procurement Contract to Debtor. Doc. 435, at A560. The parties then worked with Short Brothers to secure its consent before closing. *See* Doc. 434-6, at A522 (mid-August email, in which Short Brothers reported to AAR that it was doing due diligence on Debtor and considering consenting to assignment via novation). When these efforts did not bear fruit, however, the parties agreed to go ahead and close on August 31, 2020, before they had settled on a solution with Short Brothers. *See* Doc. 435, at A561. The sale transaction is illustrated in Figure 2 below.

8

*Figure 2: 2020 Sale of Composites Business*



Debtor immediately began manufacturing parts for Short Brothers under the Procurement Contract, using the assets it had purchased. *See id.*; Doc. 7, at A79 (describing Debtor's cashflow on the contract beginning in September 2020). And Debtor and AAR continued discussions with Short Brothers.

Within a few months, Short Brothers agreed to an assignment of the Procurement Contract via novation, with the 2009 contract and its terms remaining in force and Debtor substituting in for Manufacturing. *See* Doc. 434-7, at A528–29; *see also* Doc. 434-6, at A522–23. The Short Brothers–Manufacturing–Debtor Deed of Novation was backdated to June 23, 2020, the Asset Purchase Agreement's execution date. Doc. 434-7, at A527. Short Brothers, however, did not consent to releasing AAR from its guarantee of the Procurement Contract. So AAR in an appendix, likewise backdated to the Asset Purchase Agreement execution date, reaffirmed its guarantee. *See id.* at A530, A534–40. The parties' arrangement with Short Brothers is depicted in Figure 3 below.

9



*Figure 3: Procurement Contract
After Sale of Composites Business*

## B.    AE OpCo's 2022 bankruptcy and settlement with Short Brothers

A year and a half after buying the composites business, Debtor filed a voluntary Chapter 11 bankruptcy. Doc. 1. It thus became a debtor-in-possession and was to administer the bankruptcy estate as a fiduciary for the estate's creditors. Doc. 7, at A78; *see Baker Botts LLP v. ASARCO, LLC*, 576 U.S. 121, 124 (2015); § 1184.[3] Because Debtor proceeded under Subchapter V of Chapter 11, no creditors committee was appointed. *See* § 1181(b); Doc. 1, at A62.

The same day it filed, March 25, 2022, Debtor moved in the Bankruptcy Court to reject the Procurement Contract with Short Brothers. Doc. 7. It said it was losing money on the contract, primarily "driven by contractual price reductions and increased monthly demand" from Short Brothers and by the contract's "price terms with very limited adjustments for" inflation or market fluctuations. *Id.* at A78–79.

---

[3] Section citations are of the Bankruptcy Code, 11 U.S.C., unless otherwise noted.

Short Brothers then appeared in the bankruptcy, claiming that Debtor had breached the Procurement Contract and seeking nearly $1 million, at a minimum. Doc. 188, at A305. Debtor and Short Brothers soon settled. Under their settlement, Short Brothers would purchase Debtor's operations so that it could itself manufacture the parts covered by the Procurement Contract. Doc. 139, at A85–86, A98–152; *see also* Doc. 409, at A460–61 (summarizing settlement). Short Brothers agreed to withdraw its claim in the bankruptcy, and it and the Debtor agreed not to sue each other over the Procurement Contract. Doc. 139, at A83–86, A156–59. The settlement specified that, while Short Brothers was withdrawing its claim against the party that it said breached the Procurement Contract, Short Brothers could still sue AAR based on its guarantee of that contract. *Id.* at A157–58.

The Bankruptcy Court approved the settlement on August 24, 2022. Doc. 165. A week later, Debtor filed a plan to liquidate itself and pay its creditors; any remaining value would go to its equity holder, appellee AE HoldCo. *See* Docs. 171, 172. Later in 2022, the Bankruptcy Court confirmed the plan. Doc. 230.

**C.    AAR's attempt in the bankruptcy to secure indemnification against Short Brothers' suit in Northern Ireland**

A few weeks after Debtor entered bankruptcy in 2022 and moved to reject the Procurement Contract, Short Brothers contacted AAR, requesting indemnification on the theory that Debtor had breached the Procurement Contract and

11

thus triggered AAR's guarantee. Doc. 432, at A476 ¶ 14. AAR filed a claim in Debtor's bankruptcy, seeking indemnification against a possible suit by Short Brothers. *See* Tab C. This claim was based on Debtor's indemnification obligations from the Asset Purchase Agreement, where Debtor had agreed to hold AAR harmless if it encountered any losses related to the Procurement Contract.

In April 2023, Short Brothers did sue AAR in Northern Ireland. Doc. 433, at A507–08. It claimed that, based on AAR's guarantee, AAR should pay for Debtor's alleged breach of contract. At last count, Short Brothers has demanded well over $30 million from AAR. *Id.* at A508. That suit remains pending.

In its claim in the Bankruptcy Court, AAR sought indemnification for three categories of damages: (a) its potential liability to Short Brothers in Northern Ireland, (b) its attorneys' fees and costs in the Northern Ireland litigation, and (c) its attorneys' fees and costs in pursuing indemnification in the Bankruptcy Court. *See* Tab C, at A856; Doc. 433, at A504 & n.3; Doc. 539, at A723–24; Doc. 547, at A727–36. Debtor, joined by its equity holder (AE HoldCo), objected to the claim on the grounds that (1) Debtor was not contractually obligated to indemnify AAR, and (2) even if it were, the Bankruptcy Code excused its obligations.

12

### D.    The Bankruptcy Court's ruling that the Bankruptcy Code excused Debtor AE OpCo from its obligation to indemnify AAR

The Bankruptcy Court in 2024 rejected Debtor's first objection but largely accepted the second.

In interpreting the Asset Purchase Agreement, the court found it clear that Debtor was obligated to indemnify AAR for any losses it encountered related to the Procurement Contract. *See* Doc. 504, at A603:22–23 ("I'm not seeing how [the Short Brothers suit] falls outside."), A604:4–5 ("[H]ow do you argue that it's not covered by this purchase agreement?"); *see also* Doc. 539, at A725 ¶ 4. And Debtor's contractual responsibility to indemnify AAR extended not just to AAR's potential liability to Short Brothers, but also to its attorneys' fees and costs. *See* Doc. 504, at A604:25–605:1; Doc. 539, at A725 ¶ 4; Doc. 576.

That could have ended the matter: The Bankruptcy Court could have employed § 502(c)(1) to estimate AAR's potential liability to Short Brothers in Northern Ireland (and its future fees and costs) and ordered Debtor to pay the attorneys' fees and costs AAR had incurred in Northern Ireland and in the bankruptcy litigation. (AAR had already agreed to cap its claim at whatever remained for equity after all other claimants were paid. Doc. 504, at A580:10–21; Doc. 500, at A568.) Instead, the court largely nullified the obligations it had found the Debtor owed AAR under the Asset Purchase Agreement.

The court did this by applying § 502(e)(1). That provision instructs bankruptcy courts to disallow certain types of claims made by a claimant who "is liable with the debtor" to a third party. The Bankruptcy Court acknowledged that, given the Debtor–Short Brothers settlement a year-and-a-half before, Debtor and AAR no longer were co-liable to Short Brothers. Doc. 533, at A660:11–12. It also acknowledged that a Ninth Circuit Bankruptcy Appellate Panel had held § 502(e)(1) not to apply on indistinguishable facts. *See id.* at A662:24–663:2 (discussing *In re TBH19, LLC*, 2022 WL 16782946 (B.A.P. 9th Cir. Nov. 8, 2022)). But none of that mattered to the court: Because AAR and Debtor had been co-liable to Short Brothers back when Debtor filed for bankruptcy in early 2022, the court held § 502(e)(1) applied and disallowed AAR's claim as to its future liability in the Short Brothers' suit in Northern Ireland. Doc. 539, at A724.

The court then turned to AAR's incurred attorneys' fees. Because it had found the Asset Purchase Agreement required Debtor to hold AAR harmless, the court ordered Debtor to cover the fees AAR had incurred in Northern Ireland through April 2024, stipulated to be about $1.5 million. Doc. 576, at A791.

But to the court, AAR's fees incurred in seeking indemnification in the bankruptcy were a different matter. AAR explained that the contract-law issue was the same: In the Asset Purchase Agreement, Debtor had agreed to hold

14

AAR harmless for any losses related to the Procurement Contract, and that included AAR's fees and costs in enforcing its rights to indemnification. Doc. 547, at A732. Although Debtor and its equity holder argued that § 506, which concerns *secured* claims, required disallowing AAR's *unsecured* claim for these fees and costs, the Bankruptcy Court did not accept that argument. Instead, it focused on § 502(b), which provides for determining the amount of an allowed claim "as of the date of the filing of the [bankruptcy] petition." Based on this language, as the court saw it, since fees incurred in bankruptcy litigation are necessarily incurred post-petition, this portion of AAR's claim was not allowed. Doc. 555, at A773:24–774:3, A778:19–779:23, A782:25–783:1. It did not matter that all four circuit courts to address the issue have found that post-petition fees are allowable. The court was "not going to follow that particular holding." *Id.* at A778:19–20. Nor did the court attempt to reconcile its denial of these fees with its *grant* of the fees AAR had incurred post-petition in Northern Ireland.

AAR appealed. Doc. 578. It challenges the Bankruptcy Court's (1) disallowance of, and thus refusal to estimate, its potential liability to Short Brothers in the Northern Ireland litigation (with future fees and costs), and (2) the court's disallowance of its fees and costs incurred in enforcing its indemnification rights in the bankruptcy. Debtor and AE HoldCo cross-appealed, claiming that Debtor had no obligation to indemnify AAR at all. Doc. 579. This Court granted the

15

parties' request to appeal directly to it under 28 U.S.C. § 158(d). No. 24-90029 (11th Cir.), Dkt. 19-2.

Apart from AAR's claim, Debtor is solvent: Its assets exceed $7.5 million in cash, and it has minimal liabilities. Doc. 601-1, at A826. It also has wound down, and AAR's claim is the only one remaining. The Bankruptcy Court has ordered Debtor to retain its cash in an interest-bearing account pending this appeal. Doc. 539, at A725 ¶ 6; Doc. 576, at A791 ¶ 7. If AAR's claim is disallowed, all of Debtor's assets will go to its equity holder.

## STANDARD OF REVIEW

The Bankruptcy Court ruled as a matter of law, on summary judgment. This Court reviews a bankruptcy court's legal conclusions de novo. *In re Wagner*, 115 F.4th 1296, 1303 (11th Cir. 2024). Any review of factual findings is for clear error. *Id.*

## SUMMARY OF ARGUMENT

**1.**  In the Asset Purchase Agreement, Debtor agreed to hold AAR harmless for any losses it encountered as a result of the Procurement Contract. Short Brothers has sued AAR in Northern Ireland to recover from AAR for Debtor's alleged breach of that contract. Because that suit is based on the Procurement Contract, Debtor must indemnify AAR for that potential liability.

The Bankruptcy Court agreed, yet still disallowed AAR's indemnification claim. It did so under § 502(e)(1), which requires courts to disallow a claim when certain conditions are met, including that the claimant "is liable with the debtor" to a third party. The court acknowledged AAR now *is not* liable with Debtor to Short Brothers (because they had settled), but it disallowed AAR's claim because AAR *had been* liable with Debtor back when the bankruptcy started.

This focus on the past defies the plain meaning of § 502(e)(1): "*Is* liable" does not mean "*was* liable." It flouts the statutory context, as other, related provisions use the same or similar language in the same sense. It ignores a precedent of this Court; disregards on-point appellate authority; and finds no support in *any* case. And it is divorced from § 502(e)(1)'s purpose of preventing double recovery from a debtor. The Bankruptcy Court reached its unprecedented result by focusing on § 502(b), which provides for *setting the amount* of a claim as of when the bankruptcy starts. But that provision neither controls nor addresses

§ 502(e)(1)'s rule for simply *disallowing* a claim based on, among things, present co-liability with the debtor. Nor has any other court considering § 502(e)(1) even found § 502(b) relevant. There is no reason for a court to blind itself to post-petition events when determining co-liability, as the Bankruptcy Court did here.

**2a.**  The Bankruptcy Court also should have allowed AAR's claim for the attorneys' fees and costs it has incurred enforcing its indemnification rights. The court again focused on § 502(b), reasoning that because AAR incurred these fees post-petition, they must be disallowed. But nothing in the text of § 502(b) or in *any* case addressing it supports that conclusion, and the Supreme Court itself has ruled that a valid claim for post-petition attorneys' fees should be allowed. Though AAR *incurred* its fees post-petition, it *had a right* pre-petition to be in-demnified for any it did incur, and the Bankruptcy Code directs courts to allow all valid pre-petition claims, even if contingent on the petition date.

**2b.**  Below and in its petition, Debtor and its parent argued that because § 506(b) allows an *oversecured* creditor's claim for attorneys' fees to be *secured*, this implicitly requires that *unsecured* claims for attorneys' fees be *disallowed*. But this Court has already decided that § 506(b) establishes only whether an allowed claim is secured and says nothing about whether a claim should be allowed or disallowed. And since the Supreme Court flagged § 506(b) as an arguable issue for unsecured fee claims, four of four circuits have rejected Debtor's argument.

## ARGUMENT

I. **THE BANKRUPTCY CODE REQUIRED DEBTOR TO INDEMNIFY AAR FOR ITS POTENTIAL LOSSES IN NORTHERN IRELAND.**

### A. Bankruptcy courts "shall allow" all claims not prohibited by the Code, including contingent ones.

**1.** Congress has designed the Bankruptcy Code to provide an "orderly and centralized debt-resolution process," and its "requirements generally apply to *all* creditors" of the debtor that is seeking bankruptcy protection. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 391 (2023) (quotation marks omitted). After a debtor files for bankruptcy, its creditors may engage in "debt-collection efforts," but only within "the umbrella of the bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020). The provisions of the Code are in turn "intended to maximize the amount of property available for distribution to creditors." *Musso v. Ostashko*, 468 F.3d 99, 104 (2d Cir. 2006) (per curiam).

To enforce its rights against a bankruptcy debtor, a creditor must file a proof of claim, "a written statement of a creditor's claim." Fed. R. Bankr. P. 3001(a); *see* § 501(a); Fed. R. Bankr. P. 3002(a). The Bankruptcy Code defines "claim" broadly—any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A).

19

So, although a claim that is contingent "has not yet accrued and is dependent on some future event that may never happen," *Contingent Claim*, Black's Law Dictionary (12th ed. 2024), it is still a "right to payment" and thus a "claim" under the Code. For example, when parties "agree in advance that one party will indemnify the other party in the event of a certain occurrence," "the signing of the agreement" itself creates "a contingent right to payment." *Bendall v. Lancer Mgmt. Grp., LLC*, 523 F. App'x 554, 558 (11th Cir. 2013) (per curiam). A creditor may, and in fact must, file a proof of claim to recover on a contingent claim from the debtor. Similarly, when a claim is unliquidated (that is, for an amount that cannot presently be determined), a creditor may, and again must, file a proof of claim to recover on it from the debtor. *See United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir. 1996) (defining unliquidated claim).

A filed proof of claim is presumptively valid, or "deemed allowed." § 502(a); Fed. R. Bankr. P. 3001(f); *see also In re Manown Eng'g Co.*, 631 B.R. 492, 496 (Bankr. N.D. Fla. 2021) ("A properly filed proof of claim is *prima facie* evidence of its validity and amount"). If the debtor or another party-in-interest objects, the bankruptcy court generally must "allow" the claim unless it "implicates any of the nine exceptions enumerated in § 502(b)[(1)–(9)]." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007). And if a claim is "enforceable under applicable state law," it "will be allowed in bankruptcy

20

unless [Congress has] expressly disallowed" that type of claim. *Id.* at 452 (citing § 502(b)).

A bankruptcy court generally determines the amount of an objected-to claim "as of the date of the filing of the petition." § 502(b). In the next subsection, § 502(c), the Code addresses how that works for a contingent or unliquidated claim: Whenever waiting for fixing or liquidating the claim would unduly delay the case, the bankruptcy court "shall … estimate[]" the claim's amount. *See In re Charter Co.*, 876 F.2d 866, 872 (11th Cir. 1989) (*Charter II*) (estimation under § 502(c) is "mandatory" and "complement[s]" the Code's "broad definition of a claim"; "bankruptcy courts are well used to the estimation procedures," "even in highly complex cases"); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 530 n.12 (1984) (before § 502(c), pre-Code, courts could disallow claims that were "too difficult to estimate," but no longer). So "the Code's expansive definition of 'claim' permits automatic allowance of most 'contingent' claims," and the bankruptcy court "simply estimates" such a claim's amount "for purposes of its allowance." *In re Hemingway Transp., Inc.*, 993 F.2d 915, 923 (1st Cir. 1993).

But a claim that was contingent or unliquidated on the petition-filing date might have become fixed or liquidated by the time a court considers it. *See, e.g., SummitBridge Nat'l Invs. III, LLC v. Faison*, 915 F.3d 288, 292 (4th Cir. 2019) ("contingent pre-petition obligation" had become "fixed post-petition") (cleaned

up); *In re Lamarre*, 269 B.R. 266, 269 (Bankr. D. Mass. 2001) (claim had become "fixed and liquidated" "[d]uring the bankruptcy"); *see also In re U.S. Lines, Inc.*, 199 B.R. 476, 482 (Bankr. S.D.N.Y. 1996) ("The Bankruptcy Code clearly contemplates the postpetition liquidation of claims that were unliquidated as of the petition date."). When that happens, the court will use that post-petition data, and there may be no need to estimate. *See, e.g.*, *In re 804 Cong., L.L.C.*, 529 B.R. 213, 228–29 (Bankr. W.D. Tex. 2015).

**2.**    Under this default procedure, the Bankruptcy Court should have allowed AAR's claim for indemnification from Short Brothers' suit in Northern Ireland and estimated that claim's amount. AAR filed a valid, timely proof of claim in Debtor's bankruptcy. Tab C; *see also* Tab A, at A5 (Bankr. Dkt. 16: setting deadlines for proofs of claims). As the Bankruptcy Court found, the Asset Purchase Agreement obligated Debtor to indemnify AAR and hold it harmless for any and all losses it experienced in connection with the Procurement Contract. That "contingent right to payment" of AAR's arose upon "the signing of" the Asset Purchase Agreement, two years before Debtor's bankruptcy. *Bendall*, 523 F. App'x at 558. Under this Court's precedent, it was thus "mandatory" under § 502(c)(1) for the Bankruptcy Court to estimate the value of AAR's right to indemnification. *Charter II*, 876 F.2d at 872. The Bankruptcy Court "simply [needed to] estimate[] the amount of the claim for purposes of its

allowance, … discounting its value to reflect the uncertainty of [any] contingency." *Hemingway*, 993 F.2d at 923. Since Debtor no longer faces any other claims, it then could have paid AAR's claim with its remaining cash holdings.

> **B.    Because AAR was no longer "liable with" Debtor to Short Brothers, § 502(e)(1)(B) did not disallow AAR's claim for indemnification.**

Rather than allow AAR's indemnification claim under a straightforward reading of the Bankruptcy Code, the Bankruptcy Court denied it under § 502(e)(1)(B). That conclusion contravenes the provision's plain text, all known caselaw addressing it, its context, and its widely acknowledged purpose.

> **1.    Section 502(e)(1)(B) prohibits contingent claims by *presently* co-liable parties, thus protecting debtors from double recovery.**

**a.**    Debtor opposed AAR's claim by raising § 502(e)(1)(B). That section instructs that, even if a claim would otherwise be allowed under subsections (a)–(c), a bankruptcy court "shall disallow any *claim for reimbursement or contribution of an entity* that *is liable with the debtor* on or has secured the claim of a creditor, to the extent that … such claim for reimbursement or contribution *is contingent* as of the time of allowance or disallowance of such claim." § 502(e)(1)(B) (emphases added). So courts are to disallow a claim that meets all the following conditions:

- The claimant "entity" is seeking "reimbursement or contribution" from the debtor for a debt the entity may owe a third party;

- The debtor also "is liable" for that debt to that third-party, which is a "creditor" with a "claim," and

- The entity's claim for reimbursement or contribution "is contingent" when the time comes for the court to allow or disallow it.

*Id.*; *see In re Dant & Russell, Inc.*, 951 F.2d 246, 248 (9th Cir. 1991) (same). The objecting party has the burden to show that all three of these conditions exist. *In re Fuel Barons, Inc.*, 488 B.R. 783, 787 (Bankr. N.D. Ga. 2013).

The Bankruptcy Court failed to appreciate that the text of § 502(e)(1) directs courts to assess whether a claimant entity "*is* liable with the debtor" to a third party, not whether the claimant "was" or "used to be" or "had been" liable with the debtor. (It instead took a different, novel interpretive path, which AAR addresses below in the next section, Argument I.C, at 35.) The tenses of *all* the verbs in § 502(e)(1)'s introductory clause contemplate the present: "shall disallow," "is liable with," and "has secured." And "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992). "The use of the present tense in a statute strongly suggests it does not extend to past actions." *Sherley v. Sebelius*, 644 F.3d 388, 394 (D.C. Cir. 2011). Section 502(e)(1) thus instructs that, when a court assesses whether it presently must disallow a reimbursement claim ("shall disallow"), it must consider whether the claimant entity is presently co-liable with the debtor ("is liable with" or "has secured the claim of").

**b.**    The Bankruptcy Court also disregarded that this is the understanding across the judiciary, including in this Court's one opinion interpreting § 502(e)(1). In *In re Charter Co.*, 862 F.2d 1500 (11th Cir. 1989) (*Charter I*), defendants in suits over hazardous-waste sites filed proofs of claim against the debtors, who "were named as codefendants" in most of the suits. *Id.* at 1501–02. This Court affirmed a district-court opinion disallowing the claims under § 502(e)(1)(B) because the claimants "*remain[ed] liable with* the … debtor" when the district court issued its opinion. *In re Charter Co.*, 81 B.R. 644, 647 (M.D. Fla. 1987) (emphasis added). This Court likewise focused on *current* co-liability: It observed, "[A]s alleged by the [claimants] themselves" in their proofs of claims, "the claims are ones for which [the claimants] *are* liable with the debtor." *Charter I*, 862 F.2d at 1503 (emphasis added). It noted, "[T]hese … claims are … ones for which [the claimants] *are* necessarily 'liable with the debtor.'" *Id.* (emphasis added). And it emphasized that the underlying suits were ongoing, even that, "as of the date that this appeal was orally argued, no judgments had been entered in any of the actions." *Id.* at 1502.

Other circuit courts citing *Charter I* have shown the same focus: When a bankruptcy court must decide whether to "disallow" a claim under § 502(e)(1), the question is whether "the claiming entity *is* co-liable with the debtor." *In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 589 (5th Cir. 2024) (emphasis

added); *see Hemingway*, 993 F.3d at 925, 926–28 (holding that objector to claim for contribution needed to show that debtor "*is* contingently 'liable' to" the third party, which would depend on filing on remand an allowable claim for the third party) (emphasis added); *In re Caribbean Petroleum Corp.*, 566 F. App'x 169, 174 (3d Cir. 2014) ("the claims at issue are ones for which the Debtors and claimant *are* potentially liable as co-defendants") (emphasis added).

Although these courts were not directly considering the question here, the panel in *TBH19* was—and its decision is on point in supporting AAR's reading. The debtor had taken out a loan guaranteed by a guarantor who, like AAR, had an indemnification agreement with the debtor. 2022 WL 16782946, at *1–2. After the debtor entered bankruptcy, it faced claims from both the lender and the guarantor. *Id.* It first settled with the lender. *Id.* The guarantor, facing litigation by the lender, also settled with the debtor. *Id.* at *2–4. On appeal, other creditors argued that the bankruptcy court should not have approved the debtor–guarantor settlement because it should have disallowed the guarantor's claim under § 502(e)(1)(B). *Id.* at *4. A unanimous Bankruptcy Appellate Panel disagreed: "[O]nce the Estate settled with … and paid [the lender]" post-petition, "the guarantor[] was no longer 'liable with' the Debtor on this claim. [The lender's] claims against the Estate were eliminated." *Id.* at *5. Although "the Estate would remain obligated to indemnify [the guarantor] for amounts she eventually

26

pays to [the lender]," that just made the guarantor's claim contingent, and contingent claims are estimated under § 502(c)(1). *Id.* at *6. The panel explained this result was compelled by "the reasoning of" *Dant & Russell*, *id.* at *5, in which the Ninth Circuit had found § 502(e)(1)(B) inapplicable to a claim because "there *is* no third party to whom [the claimant] *is* 'liable with' [the debtor]." 951 F.2d at 249 (emphases added).

More generally, courts appear unanimous (other than the Bankruptcy Court here): When the time comes to assess § 502(e)(1)(B)'s bar, if the debtor cannot be liable to the third party *at that time*, the claimant seeking reimbursement is not "liable with" the debtor to that third party, and the bar does not apply. So the question is simply whether—*at the present point*—the claimant "could be liable with the debtor." *In re Amatex Corp.*, 110 B.R. 168, 171 (Bankr. E.D. Pa. 1990). If "the Debtors are not and could not be potentially liable to the [third parties] alongside [the claimant]," there is no co-liability. *In re Hercules Offshore, Inc.*, 571 B.R. 633, 641 (Bankr. D. Del. 2017); *see also In re Wolverine, Proctor & Schwartz, LLC*, 436 B.R. 253, 265 (D. Mass. 2010) (§ 502(e)(1)(B) did not apply because claimant "cannot be held 'liable with' the Debtor"). That necessarily includes when the third party has waived its claim against the debtor. *See In re Laidlaw USA, Inc.*, 287 B.R. 603, 605 (Bankr. W.D.N.Y. 2002) ("Once [the third party] has released [the debtor], [the claimant]'s claims for

contribution or reimbursement stand on their own, free of § 502(e).”). And when the third party has sued the claimant who seeks reimbursement, § 502(e)(1) applies only upon “a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay.” *In re Wedtech Corp.*, 85 B.R. 285, 290 (Bankr. S.D.N.Y. 1988); *see, e.g.*, *In re Charge Enters., Inc.*, 2024 WL 5131141, at *8 (Bankr. D. Del. Dec. 16, 2024) (citing *Wedtech*); *see also Fuel Barons*, 488 B.R. at 787–88 (“Co-liability *exists*” when “Debtor *could be* a defendant in the third-parties’ lawsuits but for the automatic stay.”) (emphasis added).

**c.**    The statutory context confirms what courts see in § 502(e)(1)’s plain text. If one moves up just one subsection, § 502(d) also uses the phrase “is liable,” also in the context of an exception to allowance. It instructs that, if a claimant holds property that is due to the estate under certain Code provisions, then, before it may recover on its claim, the claimant must turn over that property: That is, the court “shall disallow any claim” by such a claimant unless the claimant has “paid the amount, or turned over any such property, for which [the claimant] *is liable* under section 522(i), 542, 543, 550, or 553 of this title” (emphasis added). But a claimant can be liable under one of these listed sections only due to a *post-petition* event. *See, e.g.*, §§ 522(i) (debtor must avoid transfer *before* it may recover), 543(b) (custodian of debtor’s property must return that

28

property *when it learns of bankruptcy case*), 550(a) (transferred property *avoided under certain Code sections* may be recovered from transferees). Here too, Congress used the phrase "is liable" to refer to *present* realities.

Two other nearby sections of the Code use the very same present-tense phrase as § 502(e)(1)—"is liable with the debtor"—and similarly contemplate post-petition events. Under § 501(b), if a creditor neglects to file a timely proof of claim, "an entity that *is liable* to [the] creditor *with* the debtor" (emphases added) may file one on the creditor's behalf. *Cf.* 4 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶ 501.03[1] (16th ed. 2025) ("The rationale for such action by a codebtor is to ensure that some or all of the debt for which the codebtor is liable is paid through distributions in the bankruptcy case."); *Hemingway*, 993 F.2d at 927 & n.13 (similarly explaining this provision as a protection for codebtor). On its face, this contemplates the state of affairs in the present—when the entity files the proof of claim. If a debtor had filed for bankruptcy and immediately settled a claim with the creditor, it would be absurd to think the now *formerly* co-liable entity could file a proof of claim on the creditor's behalf. Rather, because the creditor no longer has a claim against the debtor, the co-liability has ceased, and so also the right to file such a claim.

And under § 509(a), "an entity that *is liable with* the debtor on … a claim of a creditor against the debtor" (emphasis added) may seek subrogation *if* it

"pays such claim" to the creditor directly. (By subrogation, a codebtor steps into the creditor's rights, such as its secured status. *See In re LTC Holdings, Inc.*, 10 F.4th 177, 185–86 (3d Cir. 2021); 4 *Collier* ¶¶ 502.06[2][e], 509.05.) For § 509(a) to apply, the codebtor must pay the creditor *post-petition* and be liable to the creditor *when it pays*. 4 *Collier* ¶ 509.02[3]; *see In re Chateaugay Corp.*, 89 F.3d 942, 947 (2d Cir. 1996) (codebtor must have been "compelled to pay") (quotation marks omitted); *In re Ariana Energy, LLC*, 2015 WL 6666245, at *4 (Bankr. E.D. Ky. Oct. 30, 2015) (codebtor "cannot act as a volunteer"). So a court considers the full post-petition picture.

**d.** Finally, courts agree that § 502(e)(1)(B) is designed to protect a bankruptcy debtor from paying twice for the same underlying debt—a purpose that also points to current co-liability as the statutory question. *See, e.g.*, *Eagle–Picher*, 131 F.3d at 1187 (§ 502(e)(1)(B) "protects debtors from multiple liability on contingent debts") (quotation marks omitted); *id.* at 1188–89 (similar); *In re MEI Diversified, Inc.*, 106 F.3d 829, 831 (8th Cir. 1997) (similar); *Hemingway*, 993 F.2d at 923 & 925–26 (similar); *Dant & Russell*, 951 F.2d at 248 (similar); *see also* H.R. Rep. No. 95–595, at 354 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6310

30

("The provision prevents competition between a creditor and his guarantor for the limited proceeds in the estate.").[4]

An illustration may be helpful: Suppose that a debtor (D) and a claimant (C) are both potentially liable to a third party (T) on the same debt, and D must reimburse C for anything C may need to pay to T. To have any hope of recovery from D, as explained above, *both* C and T *must* file proofs of claim in D's bankruptcy. If the bankruptcy court agrees that D is liable to T, the court "shall allow" T's claim. § 502(b). And if the court *also* agrees that D is obliged to reimburse *C* for whatever C eventually pays to *T*, then under the general rules of §§ 502(b) & (c), the court "shall allow" and "shall … estimate[]" C's claim *too*. So D could face paying twice for the same underlying liability. "Section 502(e)(1)(B) was designed to avoid exactly this kind of 'double-dipping.'" *Eagle–Picher*, 131 F.3d at 1188–89. The Code's solution is that, if C seeks reimbursement for a debt it might owe to T, it cannot recover so long as D is, at that time,

---

[4] Similarly, § 502(e)(1)(A) and (C), companions to § 502(e)(1)(B), also ensure a debtor does not owe more than it would on the underlying claim and, correspondingly, that an entity seeking reimbursement or contribution does not receive a windfall. Under § 502(e)(1)(A), if the third party's underlying claim "is disallowed," the entity cannot force the debtor to pay the claim to the entity anyway. And under § 502(e)(1)(C), the entity cannot *both* seek reimbursement (payment directly from the debtor) and "assert[] a right of subrogation" (payment indirectly, by taking over the third party's claim against the debtor). *See* 4 *Collier* ¶ 502.06[2][e].

also liable to T on that debt. But, correspondingly, if T *relinquishes* any claim, that ends the risk of double-dipping, so C's claim against D is allowed. *See Hemingway*, 993 F.2d at 928 (in absence of any claim submitted by or for third party, "the section 502(e)(1)(B) objection should be dismissed").

### 2. When Debtor settled with Short Brothers, it ceased to be "liable with" AAR to Short Brothers and eliminated any bar on allowing AAR's indemnification claim.

AAR's indemnification claim could be disallowed only if Debtor and its parent could show the claim met each of § 502(e)(1)(B)'s conditions, listed above (at 23–24). AAR agreed that its indemnification claim is for reimbursement for money it allegedly owes Short Brothers (the first condition). *See, e.g.*, *In re Regal Cinemas, Inc.*, 393 F.3d 647, 650 (6th Cir. 2004) ("Analytically, indemnity is the same as reimbursement.") (quotation marks omitted). And because Short Brothers and AAR are still litigating AAR's liability in Northern Ireland, AAR's indemnification claim against Debtor is contingent (the third condition).

The issue was thus whether the second condition was met—whether, under § 502(e)(1)'s umbrella text, AAR "is liable *with" Debtor* to Short Brothers. It is not.

Debtor settled its dispute with Short Brothers *years* ago, in mid-2022. Doc. 139, at A83–86. The Bankruptcy Court signed off on that settlement then. Doc. 165; *see* Fed. R. Bankr. P. 9019(a), 9001(11). And under it, Short Brothers agreed

"*not to bring any action of any nature against [Debtor]* before any legal, judicial, arbitration, administrative, executive, or other type of body or tribunal that has authority to adjudicate that action in whole or in part … *based on any claim arising out of the Procurement Contract*." Doc. 139, at A157 (emphases added). Short Brothers accordingly agreed to "promptly" withdraw its proof of claim in the bankruptcy case—which it did. *Id.* at A158; Doc. 188. And in its Northern Ireland suit, filed after it settled with Debtor, Short Brothers seeks to recover from AAR—not Debtor. Doc. 434-8.

Debtor "is" thus *not* "liable with" AAR on *any* claim by Short Brothers, and the text of § 502(e)(1) does not apply. Because AAR and Debtor are not co-liable, there is no statutory ground for disallowing AAR's claim.

That result also makes sense. Because Debtor has settled with Short Brothers, allowing AAR's indemnification claim poses no threat of double-dipping into Debtor's assets. By settling, Short Brothers gave up the chance of further recovery from Debtor on the Procurement Contract. And because any judgment Short Brothers may ultimately secure against AAR in Northern Ireland must (under English law) be reduced by what Short Brothers gained from Debtor through the settlement, AAR does not seek reimbursement for that increment. *See, e.g.*, *Tang Man Sit v. Capacious Invs. Ltd.* [1996] AC 514 (PC) 522 ("[A] plaintiff cannot recover in the aggregate … an amount in excess of his loss. Part

33

satisfaction of a judgment against one person … reduce[s] the amount recoverable in the second action."). So AAR's indemnification claim cannot force Debtor to twice give up what it settled with Short Brothers.[5]

Another way to see this is to suppose AAR tried to invoke § 501(b), discussed above, to (re)file in the bankruptcy a claim against Debtor *on behalf of Short Brothers*—notwithstanding that Short Brothers settled and so *withdrew* its claim. This would be absurd, as Debtor no longer "is liable to" Short Brothers "with" AAR, and Short Brothers holds no claim that AAR could bring on its behalf. § 501(b). For the same reason, the Bankruptcy Court had no ground for disallowing AAR's claim for indemnification.

---

[5] On purpose and policy, this Court has additionally observed that a "bankrupt's estate should not be burdened by estimated claims contingent in nature. Rather, the debtor should be expeditiously rehabilitated and reorganized, thereby providing the bankrupt a fresh start, while simultaneously according fair treatment to creditors by paying ascertainable claims as quickly as possible." *Charter I*, 862 F.2d at 1502. This concern is not implicated here either, for several reasons: Debtor will liquidate at the end of the bankruptcy, so AAR is not holding up any "fresh start." No other claims are pending, so AAR's claim is not causing any creditors to have their payments delayed. And, regardless, estimating AAR's claim will not burden Debtor's estate, as "bankruptcy courts are well used to the estimation procedures," "even in highly complex cases." *Charter II*, 876 F.2d at 872; *see supra* at 21 (discussing mandatory estimation based on *Bildisco* and *Charter II*).

### C.    The Bankruptcy Court's reasons for disallowing AAR's claim conflict with the statutory text, caselaw, and purpose.

Even though § 502(e)(1)(B) bars only claims by "an entity that *is* liable with the debtor," and AAR *is not* liable with Debtor to Short Brothers, the Bankruptcy Court in 2024 disallowed AAR's claim because AAR *had been* liable with Debtor to Short Brothers back when the bankruptcy case started in 2022. The court relied not on § 502(e)(1)'s actual, specific language for reimbursement claims (*see supra*, Arg. I.B.1, at 23), but rather on § 502(b)'s general language (*see supra*, Arg. I.A, at 20–21)—particularly its instruction to determine the amount of a claim "as of the date of the filing of the petition." *See* Doc. 533, at A670:8–12, A673:6–11, A686:19–687:1. Because § 502*(b)* pegs the *amount* of *allowed* claims to the petition date, the court thought that whether AAR "is liable with" Debtor under § 502*(e)(1)*, and thus must have its claim *disallowed*, must also be assessed as of the petition date. It thus blinded itself to the Debtor–Short Brothers settlement it had approved two years before. That clashes with the Code's text, finds support in *no* case, and does not make sense.

**1.**    The statutory text does not support the Bankruptcy Court's novel idea that § 502(b)'s language about the petition date somehow overrides what § 502(e)(1) says. The text of the latter is clear that "is liable with" means what it says—that a claimant is *currently* liable with the debtor. The same language in adjoining or related provisions—§ 502(d), 501, and 509—confirms this reading.

*Supra*, Arg. I.B, at 28–30. Section 502(e)(1) itself says it applies "[n]otwithstanding subsections (a), (b), and (c)," and the court in any event misunderstood those subsections.

If Congress *had* wanted bankruptcy courts to assess co-liability under § 502(e)(1) only as of the petition date, it could have easily done so explicitly. There are *dozens* of times the Code directs courts to assess something in light of the petition date. *See, e.g.*, §§ 101(22A)(A), 108(a)–(c), 109(e), 348(d), 506(a)(2), 507, 522(a)(2), 1145(a)(3), 1232(d)(4), 1305(b). Indeed, Congress directed courts to consider the petition date multiple times within § 502 itself, not only in the Bankruptcy Court's preferred § 502(b) but also in subsections such as (f), (g)(1), (g)(2), and (h). *But it did not do so in § 502(e)(1).* And it is "generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 537 (1994) (quotation marks omitted). So, if anything, § 502(b), among many other provisions, *supports AAR's reading*.

Beyond that, "[i]n interpreting a Bankruptcy Code section, [the Court] turn[s] to the natural meaning of the terms employed therein except in the rare circumstance where to do so would produce an absurd result." *In re Welzel*, 275 F.3d 1308, 1314 (11th Cir. 2001) (en banc). As AAR has explained, the most natural reading of the present-tense "is liable with" is that a court must disallow

36

a contingent claim for reimbursement only if the claimant is currently liable with the debtor; and, far from producing an absurd result, that reading fits with § 502(e)(1)'s purpose of preventing double recovery. *Supra*, Arg. I.B.1, at 30–32.

Other provisions of the Code reinforce this reading by showing there is nothing strange about a provision's requiring bankruptcy courts to account for post-petition events rather than, as the Bankruptcy Court here would have it, focusing solely on "the nature of the claim … as of [the petition] date." Doc. 533, at A670:10–12. In addition to the already discussed §§ 502(d), 501, and 509, which use the *same* language as § 502(e)(1), consider § 502(j). It instructs that an allowed or disallowed claim "may be reconsidered for cause." Courts often *must* consider post-petition events for this to make sense. In the context of a contingent claim, § 502(j) provides relief if, for example, the value estimated under § 502(c) proves to be off-base: When "a contingent claim [is] incorrectly estimated at the time of allowance," the claimant may return to the court and "request reconsideration." *In re Hemingway Transp., Inc.*, 954 F.2d 1, 8 n.8 (1st Cir. 1992); *see, e.g.*, *In re Lane*, 68 B.R. 609, 613 (Bankr. D. Haw. 1986) (claimants could seek reconsideration under § 502(j) "should the Hawaii litigation turn out more favorable than this court has estimated"). But if the only thing that mattered were the situation when the bankruptcy began, later events could *never*

37

provide cause to reconsider the allowing or disallowing of a claim. That makes no sense.

The Bankruptcy Court not only overlooked all this but also misunderstood § 502(b) itself. That subsection mentions the petition date in the context of determining a claim's amount. *See* § 502(b) (the court "shall determine the amount of such claim … as of the date of the filing of the petition"). And "[t]his requirement coincides with other Code sections that make it clear that section 502 applies to a proof of claim only if it reflects *a prepetition claim*." 4 *Collier* ¶ 502.03[1][b] (emphasis added). (Section 502 has some express exceptions for treating post-petitions claims as pre-petition. *See* §§ 502(f)-(i).) Claims against a debtor receive radically different treatment based on whether they arise pre-petition or post-petition. *Compare, e.g.*, § 502(b)(2) (barring pre-petition claims for interest that had not matured as of petition date), *with In re Glados, Inc.*, 83 F.3d 1360, 1367 (11th Cir. 1996) (recognizing interest may accrue on claims for services rendered post-petition); *see generally* 2 William L. Norton III, *Norton Bankruptcy Law & Practice* § 48:2 (3d ed. 2025 update) (listing differences in treatment between pre-petition and post-petition claims). Section 502(b) thus clarifies that courts should calculate the value of pre-petition claims as of the petition date. But it says nothing about when courts should determine co-liability under § 502(e)(1). The plain text of § 502(e)(1) does that.

And, again, under the Code a claim—any "right to payment"—may *exist* on the petition date even though it is contingent, unliquidated, or otherwise uncertain. *Supra*, Arg. I.A, at 19–20. That is why courts estimate them under § 502(c). And even when doing so with a view to setting the claim's amount as of the petition date, they take into account any post-petition information. *Supra* Arg. I.A, at 21–22. It would be absurd for them to turn a blind eye to it.

For all these textual reasons, the Bankruptcy Court's fixation on § 502(b) and the petition date was wrong.

**2.** The Bankruptcy Court's interpretation was also unprecedented—literally. The court cited precisely *zero* support in *any* case for its ruling that "*is* liable with" means "*was* liable with, when the case started."

In the same way, the Bankruptcy Court offered no reasoning in response to the authority that supported AAR's reading. AAR showed how *Charter I*—this Court's only precedent on § 502(e)(1)—"implicitly contemplates a current co-liability," yet the court had nothing to say on that case. Doc. 515, at A631 (AAR Supp. Br.). Nor does a single line of *Charter I* exemplify or suggest a blinkered focus on § 502(b)'s language about the value of claims as of the petition date. The case never *mentions* § 502(b).

Similarly, AAR repeatedly offered the Bankruptcy Court the on-point persuasive authority of the unanimous appellate panel in *TBH19*. *Id.* at A631–32;

Doc. 533, at A667:1–669:1. The court simply refused to follow it—merely because that court in interpreting § 502*(e)(1)* did not say anything about § 502*(b)*'s provision that allowed claims are to be valued as of the petition date. *Id.* at A657:3–9, A662:4–7, A668:15–18. Like *Charter I*, *TBH19* never mentions § 502(b). Nor did the Ninth Circuit precedent on which *TBH19* relied, *Dant & Russell*, 951 F.2d 246.

These key cases and others (collected above, *supra*, Arg. I.B.1, at 25–28) provide unbroken further support for AAR's reading. And still more examples could be added. Take the Sixth Circuit's decision in *Eagle–Picher*. A claimant argued it could not be liable with the debtor to third parties because the third parties had neglected to file proofs of claim against the debtor, and the deadline for filing had passed. 131 F.3d at 1188. The Sixth Circuit remanded for the bankruptcy court to determine whether to permit a late-filed claim. If so, "the claim would not be time-barred and [the debtor] would thus be co-liable with [the claimant]." *Id.* Under the court's reasoning, the opposite would be equally true—if the claim *was* time-barred, the debtor would *not* be co-liable with the claimant. Nowhere did the court show any interest in whether the claimant and the debtor had been co-liable *on the petition date*. What mattered was whether there would be a *present* possibility of co-liability. *Eagle–Picher* too did not cite § 502(b). The pattern of omission is telling.

40

**3.**     Finally, the Bankruptcy Court's ruling has no justification in the purpose of § 502(e)(1). When the claimant "is" no longer "liable with" the debtor, there is no danger of double recovery, and thus no need to read into § 502(e)(1)'s present-tense verb a petition-date limitation that Congress omitted. Engrafting that limitation here would only allow Debtor to escape its indemnification obligations when double-dipping cannot occur.

The Bankruptcy Court did raise settlement concerns as a policy reason to support its "only look at the petition date" interpretation, but that does not make sense and if anything cuts against the court's reading. *See* Doc. 533, at A656:22–25, A661:5–10. When a debtor faces multiple valid claims, settling one, with one claimant, does not ordinarily shield it from its other claimants, nor should it. Yet the court's reading invites a debtor to extract a windfall at the expense of its guarantors and similar creditors: It can settle the underlying claim on the cheap (because the third-party creditor knows it retains full recourse to the indemnitee) while continuing to pay nothing to the indemnitee.

That is what the court has allowed Debtor here to do. *See id.* at A661:1 (court recognizing Short Brothers "settled cheap" with Debtor). The result is not even a benefit to the Debtor itself, who will liquidate. Nor is it a benefit to the Debtor's other creditors, all already paid in full. Instead, it is simply a windfall

to Debtor's equity holder, AE HoldCo—even though equity should be paid *last*, after all creditors are fully satisfied.

*        *        *

Debtor promised to indemnify AAR for any losses it suffered related to the Procurement Contract. Debtor can escape that responsibility only if it can show that AAR "is liable with" it to Short Brothers. Since Debtor has settled with Short Brothers, it cannot. In disallowing AAR's indemnification claim, the Bankruptcy Court misread straightforward law, and this Court should reverse.

## II. THE BANKRUPTCY CODE REQUIRED DEBTOR TO INDEMNIFY AAR FOR ITS FEES AND COSTS INCURRED IN THE BANKRUPTCY LITIGATION.

Having resolved AAR's indemnification claim for liability it may owe Short Brothers in Northern Ireland (by erroneously disallowing it), the Bankruptcy Court turned to AAR's claim for attorneys' fees. Under longstanding Delaware law (which governs the Asset Purchase Agreement, Doc. 408-2, at A363), Debtor's agreement to hold AAR "harmless" from any losses related to the Procurement Contract meant it also must cover AAR's attorneys' fees and costs, both (1) those incurred defending itself against Short Brothers' suit and (2) those incurred enforcing its indemnification rights in the bankruptcy. *See, e.g.*, *Delle Donne & Assocs., LLP v. Millar Elevator Serv. Co.*, 840 A.2d 1244, 1255–56 (Del. 2004); *Pike Creek Chiropractic Ctr., P.A. v. Robinson*, 637 A.2d 418, 422–23 (Del. 1994); *supra*, Statement A.2, at 7–8.

On the first category, the Bankruptcy Court rightly agreed with AAR. Doc. 576, at A791 ¶ 3. But, again invoking its novel take on § 502(b), it disallowed the second category. Doc. 555, at A773–81. To the court, § 502(b)'s instruction to "take the amount as of the date of the filing" means that a court valuing a claim must "pigeon hole the math on the date of the petition." *Id.* at A776:20–21, A775:18–19. Since attorneys' fees and costs incurred in a bankruptcy case are necessarily incurred after the bankruptcy case begins, the court thought § 502(b) "cut[s] off" claims for such fees. *Id.* at A779:20–21. The court also "reject[ed] the idea that an estimation should even be applied to such a [claim]." *Id.* at A779:8–9. As with the liability-indemnification issue discussed above in Argument I, the Bankruptcy Court again cited *no* case for its conclusion and was unconcerned that a large body of authority does not share its singular focus on § 502(b)'s introductory language.

The court's ruling that § 502(b) disallows these fees because they were incurred post-petition cannot be reconciled with Supreme Court precedent, the Bankruptcy Code, or even the court's own decision regarding AAR's Northern Ireland fees and costs. And despite Debtor's protestations below, it is no problem at all that AAR's claim is unsecured.

**A.    Debtor must pay AAR its pre-petition claim for fees, even though the fees were incurred after Debtor filed its bankruptcy petition.**

**1.**    In *Travelers*, the Supreme Court reversed the Ninth Circuit for refusing to allow a claim for attorneys' fees incurred post-petition. 549 U.S. 443. The claimant had brought an indemnification claim against the debtor for attorneys' fees. *Id.* at 447. The claim was valid under state law, and nothing in the Bankruptcy Code disallowed it. To the Court, that settled the matter: "[A]n otherwise enforceable contract allocating attorney's fees … is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Id.* at 448.

Though the fees were incurred post-petition, the Supreme Court, unlike the Bankruptcy Court here, showed no interest in § 502(b)'s general direction that claims be valued as of the petition date. State contract law entitled the claimant to indemnification for its attorneys' fees. *Id.* at 446. And that contractual right existed pre-petition. *Bendall*, 523 F. App'x at 558 (indemnification rights arise "upon the signing of the agreement"). So the Court allowed the claim under § 502(b). *Travelers*, 459 U.S. at 453 ("a claim for attorney's fees arising in the context of litigating bankruptcy issues must be allowed if valid under applicable state law") (quotation marks omitted).

If the Bankruptcy Court's reasoning here were correct, and fees in bankruptcy must be disallowed under § 502(b) simply because they are (of course) incurred after the petition date, *Travelers* would have needed to come out the

44

other way (and would have been much shorter): The claimant's fees there were incurred post-petition, and thus, according to the Bankruptcy Court here, § 502(b) would have "cut off" the claim. But *Travelers allowed* the post-petition fees. If § 502(b) cut them off, *Travelers* makes no sense. *See Ogle v. Fid. & Deposit Co. of Md.*, 586 F.3d 143, 147 (2d Cir. 2009) ("[I]f an unsecured claim for post-petition fees was … unrecoverable" merely because the fees were incurred post-petition, "the *Travelers* Court could have disposed of the claim on that simple, available ground alone."); *SummitBridge*, 915 F.3d at 293 (similar).

So since *Travelers*, every circuit court to address claims for post-petition attorneys' fees—four of them, across a decade—has seen nothing in § 502(b) to disallow them. *See SummitBridge*, 915 F.3d at 293; *In re Sokolik*, 635 F.3d 261, 267 (7th Cir. 2011); *Ogle*, 586 F.3d at 148; *In re SNTL Corp.*, 571 F.3d 826, 843–44 (9th Cir. 2009) (per curiam). And as shown next, under the Bankruptcy Code that consensus is correct.

**2.**     Here is how a proper analysis would have gone: The definition of a "claim" under § 101(5) is "broad" and expressly includes "unliquidated" and "contingent" rights to payment. *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998). Because Debtor had agreed *pre-petition* to indemnify AAR, AAR had a valid *pre-petition* claim. *See Bendall*, 523 F. App'x at 558; *see also SNTL*, 571 F.3d at 843 n.19 ("While the representation may have been performed after the petition was

filed, [AAR's] right to collect attorney's fees arose out of the contract and is a prepetition claim.") (quotation marks omitted). AAR thus properly filed a valid and timely proof of claim under § 501(a) and the rules. *See supra* Arg. I.A, at 22.

When AAR filed the claim, it was for "an unmatured, contingent right; i.e., the right was contingent upon [AAR's] actually incurring attorneys' fees in collecting the debt" of indemnification. *SNTL*, 571 F.3d at 843 n.19 (quotation marks omitted). But, contra the Bankruptcy Court, that the claim was contingent did not "cut[] it off." Doc. 555, at A779:20–21. If § 502(b) cut off all claims that have not accrued pre-petition, no court could *ever* allow or estimate a contingent claim under § 502(c)(1)—yet § 502(c)(1) expressly calls for doing so. *See Summit-Bridge*, 915 F.3d at 293 ("If … the value of a 'claim' must be fixed as of the petition date, then there would be no need for [§ 502(c)] estimates."); *see also Welzel*, 275 F.3d at 1319 ("a statute should be construed in a manner that avoids an absurd result").

Under § 502(a) and (b)'s instruction that courts "shall" allow claims that are valid under state law, the Bankruptcy Court had to allow AAR's claim for attorneys' fees, even if it was contingent. And to the extent the claim remained contingent when the time came to allow and value it, the Bankruptcy Court had to estimate it under § 502(c)(1). *See Charter II*, 876 F.2d at 872. But AAR's claim for fees incurred in Bankruptcy Court did *not* remain contingent—it "became

fixed postpetition when the fees were incurred." 5 *Collier* ¶ 553.03[h][i][1]; *SNTL*, 571 F.3d at 844 (same). Under the Asset Purchase Agreement, Debtor was obligated to cover those fees. And under § 502(b), the Bankruptcy Court was obligated to allow AAR's claim for them.

3.      The Bankruptcy Court's preoccupation with the petition date misses that analyzing claims under § 502 often requires considering post-petition events. *See supra* at 22, 28, 37. True, AAR's right to attorneys' fees was contingent as of the petition date, and thus not due and payable under non-bankruptcy law at that moment. But contingent claims are included within § 101(5)'s definition of a claim, and courts *must* allow all claims, even contingent ones, so long as they are valid under state law and not disallowed under one of the "nine exceptions enumerated in § 502(b)[(1)–(9)]." *Travelers*, 549 U.S. at 449. The Bankruptcy Court pointed to none of those exceptions, simply invoking § 502(b)'s initial language about determining the "amount" of a claim "as of the [petition] date" as a free-floating tenth exception. This was erroneous. *SNTL*, 571 F.3d at 838 ("contingent claims cannot be disallowed simply because the contingency occurred postpetition.").

The Bankruptcy Court's ruling was also internally inconsistent. In its mind, § 502(b) cuts off AAR's claim for attorneys' fees and costs incurred during the bankruptcy litigation because AAR incurred them post-petition. But the

court (correctly) *allowed* AAR's claim for fees and costs incurred in the Northern Ireland litigation, even though that suit did not begin and fees therefore were not incurred until more than a year *after* Debtor filed for bankruptcy. If the Bankruptcy Court were correct that § 502(b) disallowed attorneys' fees incurred post-petition, it would not matter whether the fees were incurred in Northern Ireland civil litigation or a United States bankruptcy proceeding; both should have been disallowed. In allowing AAR's claim for fees incurred in Northern Ireland, the Bankruptcy Court implicitly conceded its error of law in disallowing AAR's claim for fees incurred in this bankruptcy. The Code required the court to allow both.

Finally, the Bankruptcy Court's concern that allowing post-petition attorneys' fees would prove too difficult to estimate is beside the point. *See* Doc. 555, at A773:1–4, A779:8–9. For one, AAR's claim for attorney's fees *already incurred* in the bankruptcy is, again, *not* contingent and thus not for fees that must be estimated. That fee amount has been fixed. Besides, bankruptcy courts do not get to pick and choose which claims to estimate. Section 502(c) makes estimation "mandatory," and it is common, "even in highly complex cases." *Charter II*, 876 F.2d at 872. Even accepting the questionable assumption that attorneys'

fees are unusually "difficult to estimate," that is no excuse under the Code. *Bildisco*, 465 U.S. at 530 n.12.[6]

### B. Debtor must pay AAR its fees, even though AAR's claim is unsecured.

The Bankruptcy Court's unprecedented, erroneous conclusion that § 502(b) bars all contingent, unliquidated claims was a theory the court developed on its own—Debtor and its parent never suggested it. Debtor argued, instead, that § 506, which addresses the secured status of allowed claims, somehow disallows AAR's unsecured claim for attorneys' fees. Debtor also renewed this argument in its direct-appeal petition. *See* No. 24-90029 (11th Cir.), Dkt. 1-2, at 11. But *every* court of appeals to consider this argument post-*Travelers* has rejected it. *See SummitBridge*, 915 F.3d at 293–95; *Ogle*, 586 F.3d at 148; *SNTL*, 571 F.3d at 843. This Court should too.

1. *Debtor's argument below:* Section 502, titled "Allowance of claims or interests," deals with whether to allow claims in bankruptcy. Section 506, titled

---

[6] The Bankruptcy Court's unreasoned statement that, alternatively to being disallowed, AAR's fees and costs "were discharged so they're not enforceable" does not provide any basis for affirming. Doc. 555, at A778:24–7791:1. The confirmed plan *did not* allow for a discharge. *See* Doc. 230, at A310 (confirmation order, striking any reference to "discharge" in the plan). And since Debtor is liquidating and winding down, the Code *could not* have provided a discharge. *See* § 1141(d)(3); 8 *Collier* ¶ 1141.05[4]. Besides, nowhere does the Code give courts the authority to ignore § 502(b)'s clear instruction to allow valid claims.

"Determination of secured status," addresses whether an allowed claim is secured or unsecured. Under § 506(a)(1), "[a]n allowed claim … is a secured claim to the extent" the creditor has a secured interest in the debtor's property. Section 506(b) then says that, "[t]o the extent that an allowed secured claim is secured by property [worth more] than the amount of such claim, there *shall be allowed* to the holder of such claim, interest on such claim, and any reasonable fees … provided for under the agreement … under which such claim arose" (emphasis added).

Debtor seized on the italicized portion above: Because § 506(b) speaks of "allow[ing]" interest and fees for *oversecured* creditors, it must follow by negative implication that § 506(b) disallows fees and costs for *unsecured* creditors. Not so.

**2.**    *This Court's contrary precedent:* Debtor's argument is foreclosed by this Court's interpretation of § 506(b). In *Welzel*, which predated *Travelers*, this Court, en banc, faced the same argument (though in the context of pre-petition fees)—that by "allow[ing] … reasonable fees" for oversecured creditors, § 506(b) implicitly disallows all other fee claims in bankruptcy. 275 F.3d at 1313.

This Court said no. It read § 506(b) as "completely silent with regard to the allowance/disallowance issue." *Id.* at 1317. That is because § 506 "should be read in tandem with" § 502. *Id.* As its title suggests, § 502 "deals with the threshold question of whether a claim should be allowed or disallowed." *Id.* at

50

1318. Then, "[o]nce the bankruptcy court determines that a claim is allowable, § 506 deals with the entirely different, more narrow question of whether certain types of claims should be considered secured or unsecured." *Id.* Section 506(a) determines whether and to what extent an already "allowed claim" is a "secured" one; and then § 506(b) simply determines whether and to what extent that "allowed secured claim" includes within "such claim" interest and fees. Section 506(b) thus does *not* address "the allowance or disallowance of the underlying claim itself." *Id.* at 1317 (quotation marks omitted).

So Debtor is wrong: Section 506(b) does not *dis*allow anything. All it does is grant *secured* status to an oversecured creditor's claim for fees.

**3.**    *Other authority:* More recently, the courts of appeals have unanimously rejected Debtor's § 506(b) argument for an additional reason: It is foreclosed by the Supreme Court's reasoning in *Travelers*.

In *Travelers*, the Supreme Court emphasized that "state law governs the substance of claims" in bankruptcy. 549 U.S. at 450. So "claims enforceable under applicable state law will be allowed in bankruptcy unless they are *expressly* disallowed." *Id.* at 452 (emphasis added).

The circuit courts have thus held that, because "§ 506(b) never mentions, let alone expressly disallows, unsecured claims for post-petition attorneys' fees," it cannot be read to disallow claims like AAR's. *SummitBridge*, 915 F.3d at 294.

51

"[S]ection 506(b) is … irrelevant to determining the allowability of an unsecured claim." *SNTL*, 571 F.3d at 843. These circuits courts also relied on *Welzel*. *Id.* at 842; *SummitBridge*, 915 F.3d at 294–95.

Their reasoning is correct. Section 502(b), not § 506(b), addresses the allowability of claims, and "under *Travelers*, section 502(b) interposes no bar to an unsecured creditor's ability to recover post-petition attorneys' fees." *Ogle*, 586 F.3d at 147. Indeed, "Congress … knows how to draft a provision that expressly disallows … certain attorneys' fees," but it included nothing within § 502(b) to generally disallow unsecured post-petition attorneys' fees. *SummitBridge*, 915 F.3d at 295 (discussing § 502(b)(4), which disallows certain fees incurred by a debtor). The only remaining question is thus "whether [§ 506(b) itself] *disallows* post-petition attorneys' fees, and does so *expressly*," as *Travelers* requires. *Ogle*, 586 F.3d at 148 (second emphasis added). But § 506(b) merely "specifies what may be included in a secured claim." *SNTL*, 571 F.3d at 842. It never mentions unsecured claims for post-petition attorneys' fees. It certainly does not expressly disallow them. So an "enforceable contract allocating attorney's fees" remains binding in bankruptcy court, as Congress has not "clearly and expressly" said otherwise. *Travelers*, 549 U.S. at 448, 453.

These circuits have also rejected Debtor's suggested argument (repeated in its petition) that *United Savings Association of Texas v. Timbers of Inwood Forest*

*Associates, Ltd.*, 484 U.S. 365 (1988), decided 20 years before *Travelers*, somehow supports its position. *See* No. 24-90029 (11th Cir.), Dkt. 1-2, at 15 (raising *Timbers*); *see also SummitBridge*, 915 F.3d at 295 (rejecting *Timbers* argument); *Ogle*, 586 F.3d at 148 (same); *SNTL*, 571 F.3d at 844–45 (same). In *Timbers*, the Supreme Court found that "an undersecured creditor could not receive postpetition interest on the unsecured portion of its debt." *SNTL*, 571 F.3d at 844. That holding relied on § 502(b)(2), "which expressly disallows a claim for *interest* that is unmatured." *Ogle*, 586 F.3d at 148 (emphasis added). But § 502(b) is silent about post-petition *fees*, apart from certain debtor-incurred fees that § 502(b)(4) addresses. Because nothing in § 502(b) expressly disallows post-petition attorneys' fees, a valid contractual claim for such fees must be allowed. *SummitBridge*, 915 F.3d at 295.

Finally, as the Ninth Circuit has already done, this Court should reject the reasoning of *In re Electric Machinery Enterprises, Inc.*, 371 B.R. 549 (Bankr. M.D. Fla. 2007). *See SNTL*, 571 F.3d at 844–45. That case was decided just months after *Travelers*, before the clear circuit consensus coalesced around allowing AAR's type of claim. *Electric Machinery* barely mentions *Travelers*, never wrestles with *Travelers*' requirement that a Code-based disallowance of valid state-law claims be express, and overlooks that *Welzel* held § 506(b) has nothing to do with allowing or disallowing claims. *See Elec. Mach.*, 371 B.R. at 552–53. Plus, *Electric*

*Machinery* relied on the policy concern that allowing an unsecured claim for attorneys' fees would decrease the recovery of other unsecured creditors because the debtor was *insolvent*. *See id.* at 554. To the questionable extent that policy concern matters, *but see SNTL*, 571 F.3d at 845; *Ogle*, 586 F.3d at 149; *Summit-Bridge*, 915 F.3d at 295–96, it is absent here: Debtor has no claims pending besides AAR's and has funds to pay AAR's claim. Disallowing AAR's claim would mean that Debtor's remaining assets would all go to equity instead. That is perverse in general in bankruptcy, and particularly perverse here, when it was Debtor's equity holder that directed it to agree in the Asset Purchase Agreement to hold AAR harmless in the first place.[7]

## CONCLUSION

This Court should reverse and remand with instructions to (1) allow and estimate AAR's claim for indemnification for its potential losses in Northern Ireland, and (2) allow AAR's claim for the attorneys' fees and costs it has or will incur enforcing its indemnification rights.

---

[7] This Court once cited *Electric Machinery* in an unpublished per curiam opinion, *In re Lazarus Holdings, LLC*, 816 F. App'x 417, 422 (11th Cir. 2020). But the contract that provided for attorneys' fees there was "void *ab initio*," so it could not support any fee claim. *Id.* at 420. *Lazarus* thus gave no opportunity to consider whether § 506(b) disallows an otherwise valid claim for attorneys' fees, and this Court understandably cited neither *Travelers* nor *Welzel*.

Dated: June 2, 2025

Respectfully submitted,

*/s/ C. Kevin Marshall*

C. Kevin Marshall
  *Counsel of Record*
David Wreesman
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3939
ckmarshall@jonesday.com
dwreesman@jonesday.com

Morgan R. Hirst
JONES DAY
110 North Wacker Dr., Suite 4800
Chicago, Illinois 60606
(312) 782-3939
mhirst@jonesday.com

Patrick M. Mosley
Sarah E. Gunn
HILL WARD HENDERSON
101 E. Kennedy Blvd., Suite 3700
Tampa, Florida 33602
(813) 221-3900
patrick.mosley@hwhlaw.com
sarah.gunn@hwhlaw.com

*Counsel for Appellant AAR CORP.*

## COMBINED CERTIFICATIONS

In accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court, I hereby certify the following:

1.    This document complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(A) because it contains 12,723 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.    This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced 14-point font, using Microsoft Word in a 14-point Calisto MT font in the text and the footnotes.


DATED:  June 2, 2025                    By:   */s/ C. Kevin Marshall*_____
                                              C. Kevin Marshall

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2025, pursuant to Federal Rule of Appellate Procedure 25 and Circuit Rule 25-3(f), I electronically filed Appellant AAR CORP.'s Opening Brief and Appendix with the Clerk of Court of the U.S. Court of Appeals for the Eleventh Circuit via the CM/ECF system and service was accomplished on counsel of record by that means.

DATED: June 2, 2025                    By:    */s/ C. Kevin Marshall*
                                              C. Kevin Marshall

57